**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-7244**

DEMETRIUS HILL,

              Plaintiff - Appellant,

       v.

WARDEN HAYNES; A. W. GILL; WARDEN DRIVER; CAPTAIN ODDO;
LIEUTENANT CLEMENS; LIEUTENANT GIFFORD; LIEUTENANT TRAIT;
CORRECTIONAL OFFICER SPOTLAN; FOSTER; CORRECTIONAL OFFICER
MORGAN; COUNSELOR MORRERO; ETRIS,

              Defendants - Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg.  John Preston Bailey,
Chief District Judge.  (3:06-cv-00136-JPB-JSK)

Submitted:  April 20, 2010          Decided:  June 2, 2010

Before TRAXLER, Chief Judge, and NIEMEYER and GREGORY, Circuit
Judges.

Vacated and remanded by unpublished per curiam opinion.

Demetrius Hill, Appellant Pro Se.   Helen Campbell Altmeyer,
Assistant United States Attorney, Wheeling, West Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Demetrius Hill, a former inmate at USP-Hazelton, filed the subject action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against various prison employees at that institution, alleging they violated his First, Fifth, and Eighth Amendment rights by placing him in the Special Housing Unit ("SHU") without an incident report upon his arrival at USP-Hazelton in September 2006, and that the conditions there were so unsanitary and deplorable that they threatened his health and well-being. The Defendants filed a motion to dismiss or, in the alternative, for summary judgment based on Hill's failure to exhaust administrative remedies. The magistrate judge, concluding there was a genuine issue of material fact as to whether Defendants played a part in Hill's failure to exhaust, recommended denying Defendants' motion for summary judgment. The district court, however, declined the magistrate judge's recommendation, finding no genuine issues of material fact as to exhaustion. For the reasons that follow, we vacate and remand for further proceedings.

I.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust available administrative remedies prior to filing an action challenging the conditions of his

2

confinement.[1]  42 U.S.C. § 1997e(a) (2006); <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006) (requiring "proper" exhaustion of administrative remedies); <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008) (discussing "availability" of remedies).  "[T]he PLRA's exhaustion requirement is mandatory," <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  Pursuant to § 1997e(a), the exhaustion requirement is applicable to <u>Bivens</u> claims.  <u>See</u> <u>Steele v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1214 (10th Cir. 2003), <u>abrogated on other grounds by</u> <u>Jones v. Bock</u>, 549 U.S. 199 (2007); <u>Booth v. Churner</u>, 206 F.3d 289, 291 (3d Cir. 2000).

---

[1]  The BOP grievance process is set forth at 28 C.F.R. § 542.13-.15 (2009).  First, an inmate normally must present his complaint informally to prison staff using a BP-8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP-9 form.  The BP-8 and BP-9 forms are linked.  Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a).  If the Warden renders an adverse decision on the BP-9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP-10 form. 28 C.F.R. § 542.15(a).  The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP-11 form.  <u>Id.</u>

We review a district court's order granting summary judgment de novo.[2] Jennings v. University of N.C., 482 F.3d 686, 694 (4th Cir. 2007). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Because the prison employees bear the burden on exhaustion in this case, see Bennette, 517 F.3d at 725, they must show that the evidence is so one-sided that no reasonable factfinder could find that Hill was prevented from exhausting his administrative remedies. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). An otherwise properly supported motion for summary judgment will not be defeated by the existence of some factual dispute;

---

[2] Defendants' motion was styled "Motion to Dismiss, or Alternatively, Motion for Summary Judgment." However, Hill received notice pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), of his right to file material responsive to the Defendants' dispositive motion. Hill availed himself of this opportunity and, because the district court considered materials other than the complaint, the district court's order is deemed a grant of summary judgment. Fed. R. Civ. P. 56(c).

4

rather, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Id. at 248. Indeed, to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e)(2); see Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-moving party's] case.") (citation omitted)).

## II.

In this case, Hill does not contest that he failed to exhaust his administrative remedies. He argues, however, that Defendants hindered his ability to exhaust his administrative remedies with respect to the allegations in the subject complaint. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Thus, "when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in

5

failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (stating administrative remedy rendered unavailable when prison officials prevent prisoner from using it). Accordingly, the district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

Hill asserted in his complaint the prison staff threatened to kill him and refused him the tools necessary to file administrative remedies. Specifically, he maintained that, while he was in the SHU, he received BP-8 forms and turned them in, but that he never received any responses. He alleged that at one point he filed a BP-9 request with the Warden indicating he had received no responses, but that he received no response to that form either. Hill claimed that after his release from the SHU, when he asked for BP-8 forms, one of the named defendants, Counselor Morrero, refused to give him forms. Hill alleged he was threatened with going back to the SHU, and when he asked for other forms, Morrero stated he did not have any and Morrero never returned with forms as he indicated he would. Hill claimed prison officials chose not to respond to the

6

grievances he did file to hinder his efforts to exhaust his administrative remedies.

Hill also filed a motion for a temporary restraining order/preliminary injunction. In support of his motion, Hill filed a "declaration," stating under penalty of perjury that (1) he has repeatedly filed BP-8 forms; (2) the institution failed to respond to the BP-8 forms, but then rejected his BP-9 requests because he did not have responses to his BP-8 submissions, thus preventing him from exhausting administrative remedies; (3) he has been repeatedly retaliated against for filing his administrative remedies; and (4) prison officials have taken away BOP-authorized "flexi-pens" to prevent the filing of complaints, as the BP-9 forms require completion in pen.

The United States, appearing on its own behalf, responded, arguing for dismissal of Hill's complaint for failure to exhaust administrative remedies. The Government pointed to the fact that USP-Hazelton received Hill's requests for administrative remedies as early as December 6, 2006, and January 9, 2007, clearly demonstrating Hill had access to administrative remedies. The Government further noted that Hill filed several BP-8 forms but failed to file BP-9 forms to continue the administrative grievance process. In response to Hill's argument that he was rarely visited by counselors while

7

he was in the SHU and that when he was visited, he was not provided with the forms needed to file requests for administrative remedy, the Government maintained the SHU at USP-Hazelton is visited at least once each week by each member of Hill's Unit Team and that every Thursday, the entire executive staff, including the Warden, Associate Wardens, Department heads, and the Captain, walk through the SHU to address any issues the inmates may have. The Government asserted that each time a member of the executive staff or unit team makes rounds in SHU he provides administrative remedy forms to inmates upon request. Last, the Government attached responses to Hill's requests for informal resolution, suggesting that they cast doubt upon the veracity of Hill's allegations.

The Government also attached an affidavit from Alecia Sankey, the Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the Bureau of Prisons. She averred, among other things, that Hill has submitted approximately 147 administrative remedies during his incarceration with the BOP. Sankey further attached six responses to Hill's requests for informal resolution. Rapunzel Stephens, the case manager on Hill's unit, also submitted an affidavit stating that on December 27, 2006, she conducted inmate Hill's Program Review and, during that time, he did not express any concerns regarding

8

obtaining administrative remedy forms, submitting his requests, or receiving responses to his requests for informal resolution.

Hill filed replies to the Government's response asking the district court to take note of several things. First, Hill submitted affidavits from two other inmates at USP-Hazelton, who alleged prison officials have hindered their ability to file for administrative remedies. Second, Hill highlighted that the prison officials' responses to his BP-8 forms were all made *after* he filed the subject complaint and that these forms concerned issues arising after the incidents underlying the subject complaint. He argued that the fact that he was later given forms to file subsequent complaints does not lessen the legitimacy of his claim that he was refused forms for incidents occurring after his arrival to USP-Hazelton up until mid-December, the time he filed his complaint. Third, Hill indicated that the BP-8 forms to which the prison officials responded clearly show he has been attempting to exhaust his administrative remedies. Fourth, he noted by the time of his Program Review with Case Manager Stephens on December 27, 2006, weeks after his complaint was filed, he had already been able to file some BP-8 forms regarding new claims. He asserted that, in any event, she regularly refused to give him administrative remedy forms. Fifth, Hill maintained that, if given a hearing on the exhaustion issue, he would produce witnesses who would

9

attest to the fact that Defendants repeatedly refused to give out administrative remedy forms.

In their motion to dismiss or for summary judgment, Defendants noted that Hill has filed more than 163 administrative complaints since his confinement and argued that Hill has not fully exhausted a single remedy since being confined at USP-Hazelton. Relying on another affidavit from Sankey, the Defendants highlighted that Hill has filed approximately five Requests for Informal Resolution and received responses from staff on each request since his designation to USP-Hazelton. They further alleged Hill has a history of failing to exhaust administrative remedies, noting that of the 163 remedies Hill filed during his incarceration in the BOP, only seven were even submitted for consideration at the final level of the administrative remedy process. Accordingly, Defendants sought dismissal of the subject complaint based on Hill's failure to exhaust administrative remedies.

In his response, Hill essentially reiterated his prior allegations that he was denied grievance forms and, to the extent he received and was able to file some forms, officials responded to these grievances only after he filed the subject complaint. In an attached affidavit, he claimed he filed BP-9 forms that were never responded to, were intentionally destroyed, or were never logged into the computer.

The magistrate judge concluded that Defendants failed to verify the accuracy of their reports or file any affidavit from any staff member that would contradict Hill's assertions. Finding a genuine issue of material fact as to whether Defendants played a part in Hill's failure to exhaust, the magistrate judge recommended denying Defendants' motion for summary dismissal based on Hill's failure to exhaust.

In their objections to the magistrate judge's report, Defendants attached an affidavit from Susie Elza, declaring under penalty of perjury that she is an Administrative Specialist who is responsible for processing all administrative remedy requests, and that she has never failed to process any administrative remedy request nor has she ever destroyed an administrative remedy request submitted by Hill. The Defendants also proffered the previously submitted affidavit from Rapunzel Stephens, the substance of which was that when she interviewed Hill on December 27, 2006, less than two weeks after he filed his complaint, he did not express any concerns regarding receiving remedy forms, submitting the forms, or receiving responses.

Hill responded to the Defendants' objections on various grounds. Of particular note, Hill remarked that nowhere in Case Manager Stevens' affidavit does she state that one of

11

her duties is to hand out administrative forms.[3] Hill maintained that the magistrate judge properly noted that no one who was actually in charge of handing out administrative remedy forms filed an affidavit refuting his claims. The district court, after conducting a de novo review, and finding no genuine issue of material fact as to "whether or not the defendants played a part in the plaintiff's failure to exhaust," declined to accept the magistrate judge's recommendation, granted the Defendants' motion to dismiss or for motion for summary judgment and dismissed Hill's complaint without prejudice for failure to exhaust.[4]

---

[3] In her affidavit, Case Manager Stephens states:

> Unit Counselors are assigned the responsibility of processing informal resolutions, administrative remedies, visitation forms, phone list, addressing financial responsibility obligations, legal phone calls, legal mail distribution, and trust fund account forms.

(E.R. 366).

[4] The district court's judgment was entered on March 5, 2008. Hill's notice of appeal was filed on July 16, 2008, the day he delivered it to prison officials for mailing. See Fed. R. App. P. 4(c)(1); Houston v. Lack, 487 U.S. 266, 276 (1988). In his notice of appeal, Hill stated that he did not receive notice of the district court's order until July 9, 2008, when he received a copy of the district court's docket sheet, in response to his request to the district court for the status of his case. We remanded to the district court to determine whether Hill was entitled to the benefit of Fed. R. App. P. 4(a)(6), governing reopening of the appeal period. See Hill v. Haynes, 321 F. App'x 338 (4th Cir. 2009) (No. 08-7244). On remand, the district court permitted reopening of the appeal (Continued)

III.

We find there are genuine issues of material fact concerning the exhaustion of administrative remedies that preclude summary judgment. Hill argues that Defendants hindered his ability to exhaust his administrative remedies with respect to the incidents giving rise to the subject complaint. Hill's argument is two-fold: (1) prison employees failed to provide him with the necessary BP-8 and BP-9 forms upon request in some instances; and (2) at other times, prison employees failed to enter his appeals in the system or destroyed them, or simply failed to respond to the forms he did submit in an effort to thwart his ability to exhaust his administrative remedies. Hill alleges he requested BP-8 forms from Counselor Morrero several times and Morrero refused to provide them. There is no affidavit from Morrero refuting this claim. Furthermore, although the administrative specialist claimed she never destroyed any administrative requests and processed all those that were received from Hill, there is nothing contradicting Hill's assertion that some of the named officers destroyed his forms upon receiving them from Hill. As to the case manager's statement that Hill failed to mention any difficulties with

period, and the appeal was returned to this court for disposition on the merits.

13

forms at his review on December 27, Hill did not allege, nor does the record indicate, any difficulty in receiving forms around that time. Furthermore, Hill's subsequent BP-8 forms were responded to *after* he filed the subject complaint. We further find Defendants' reliance on Hill's high volume of filings specious. The fact that Hill filed a great number of complaints in other prisons is irrelevant to the issue of whether his efforts to file grievances were obstructed at USP-Hazelton.

Hill has sufficiently shown genuine issues of material fact as to whether Defendants hindered his ability to exhaust administrative remedies. For example, was Hill denied forms when he requested them? Could Hill have appealed to the Bureau of Prisons Regional Director without the appropriate form? See 28 C.F.R. § 524.14(a), (d)(1). At what point, if any, did the action or inaction of any prison official constitute preventing a grievance from being filed? Kaba, 458 F.3d at 686 (finding affidavits of the prison officials and Kaba's other grievances and filings merely turn into a dispute with evidence, requiring the factfinder to evaluate the credibility of the witnesses and other evidence in the record); see also Lewis v. Washington, 300 F.3d 829, 831-32 (7th Cir. 2002) (deemed administrative remedies exhausted when prison officials failed to respond to inmate grievances because those remedies had become "unavailable"); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (same);

14

Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998); but see Jernigan v. Stuchell, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (finding, because Jernigan was given ten days to cure deficiency in question, he did not exhaust administrative remedies). We therefore find the district court erred in granting summary judgment on this issue.

Accordingly, we remand for a determination whether the grievance procedure was "available" to Hill within the meaning of § 1997e(a) so that he could administratively exhaust his claim. For the reasons explained above, we vacate the district court's judgment and remand this matter for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED